v. Sensio. Is it Mr. Belanger or Belanger? Belanger, Your Honor. Belanger. So not like the shortstop for the Baltimore Orioles of the 60s. No, but I have been asked that a few times. I guess it's an unusual name, but it's unusual enough and has multiple variations. So, Mr. Belanger. Yes, sir, Your Honor. I'm from New Orleans. You've reserved two minutes for rebuttal. Yes, sir. So that gives you eight minutes out of the gate, and you may proceed. I may have pleased the Court. My name is Andre Belanger, and I represent Ms. Delana Brandon, Your Honors. Ms. Brandon, in 2019, suffered a very catastrophic injury. The defendant Sensio's pressure cooker exploded, spilling hot contents of the food and burned 20 percent of her body. That is an incident that need not have occurred. Sensio's product should not have been designed in such a way where it could unlock and open its lid under normal use, allowing the contents to spill and hurt people. I mean, that's the whole basis of the suit. But I guess the question is whether or not the suit was brought in time, given the statute of limitations, right? Yes. And so I think there are two critical fact patterns that we need to look at when we're addressing that question. And the first is the efforts of due diligence exercised by Ms. Brandon, which were properly pled in this complaint. Before Ms. Brandon discovered the recall in 2023, she would go online. She would put in search terms such as the product, recall. And she even went to what I would call the gold standard, the CPSC, which is the website from the Consumer Safety Protection. But I guess the question is, having been injured the way she was, put her on notice that there's a problem with this thing. Do you need to be able to go through and figure out whether other people have had problems before you are on notice that there is a problem with this device? Well, she thought that this was a freak occurrence when she didn't see anything. I mean, she trusted the government agencies to determine whether or not there was a viable recall. She even went to the horse's mouth. She went to Sensio's website and did not see anything. She knew enough then to do research, right? Isn't that sufficient notice that she should have consulted with counsel or pursued it in some other way? Well, she wasn't pursuing a product's liability claim because I don't believe that she could do so in Virginia. But she was doing the best that she could. She should have known at that point. She did know or she should have known that there was no warning, that the thing was, the product was sold without any warning, that it could be opened while it was in operation. And that's the basis for the fraud claim, right, or the deception claim. It is, and it gets a little bit more nuanced than that. When we look at the product timeline, which I think is important, this product began to be manufactured in 2015. The recall comes out in 2013. It's approximately eight years. We have pled in our complaint that over the course of that period, there were 63. She waited five years from the injury to sue, right? She did wait. But what we are submitting to the court is that the defendant was concealing these injuries for a period of years and continued to do so until the 61st person got burned. Now, we have not had a chance to do discovery yet in this case. But just looking at the law of averages, the time Ms. Brandon's injury takes place, there has to be over a dozen people that have been hurt just like her, and yet the defendant does not seek to do a recall on this, and they wait for a period of years. They are preventing her from exercising. But simply what you're saying is having received an injury, the clock doesn't start ticking until there's been a recall. I'm not quite saying that. She tried to see if there's anything about this product online through government agencies and also through the defendant's website itself. Finding none, she assumed that it was a freak incident. But why, I mean, why wouldn't it be, I've had this incident, I take this machine and have somebody who knows something take a look at it to figure out if it's defective. Why wouldn't the injury itself put you on notice that there might be a problem here? I think that not everyone would assume they need to take this to an engineer to try to figure out if there is anything wrong with the design. She was trusting with the publicly available information that she was looking at. She was trusting the defendant's own website, and she was trusting the government when she was looking to see. Even assuming it was a freak injury, there was no warning, and she knew all that. Why isn't that enough? To cause a reasonable person to go pursue her remedies. Well, what we're trying to suggest is that she was trying to see if there was a recall to pursue, but she found none. And so... Wait, a recall to pursue? A recall just means that they've said we're taking these back, whether you've been injured or not. Yeah, I misspoke. But she was trying to see if the product was recalled, which would have suggested that there was a problem with its design, and she didn't find that. And often there are many, many injuries before a product is recalled, right? That sometimes is what prompts a recall, but that doesn't mean somebody's got to be the first to be injured or the second or the third or, as you mentioned, up to the 51st. So she being injured, not noticing a recall, the inquiry doesn't end there, right? You could still say, well, maybe there should be a recall. There isn't one, but maybe there should be because this was a freak accident and this shouldn't have happened. Well, what I would suggest to the court is baton this happened in 2019. We're halfway through the cycle of the product, so there should have been many instances brought to the defendant's attention. Why did she wait four years between the injury and the Internet searches? Why not search sooner? Well, she was injured in 2019. She bought the product in 2018. And so what we are suggesting is that she was not aware that there was this big of an issue until the recall in 2023. But at the time, she did her due diligence. She searched what she thought that she could search. She looked towards the defendant to see if they would offer any guidance, and they didn't. And adding insult to injury, when she did try to take advantage of the recall, they wouldn't have sent it to her because she no longer had the product and she threw it away because it blew up. I see that I have one minute left here. One of the issues that I have is that an adverse ruling here would allow defendants such as Fencio literally ride out a clock for years and allowing people to get hurt. We've pled enough at the pleading stage to show due diligence. We've pled enough at the pleading stage to show that they had concealed this wrongdoing for years. And I think that the court did not provide us with all reasonable inferences as it should have. And so I am asking this court to reverse the district court's ruling in its de novo review of the record. And I appreciate your time this morning, Your Honor. Of course. Well, you've reserved two minutes for rebuttal.  Thank you, Mr. Belanger. Now we'll hear from Ms. Salmeci. Salmeci. Salmeci. Salmeci, Your Honor. Salmeci. Yes, Your Honor. Good morning. That was a charm. No, that's all right. All right. You may proceed. Good morning, Your Honors. Judy Salmeci from Wilson House for the appellee. I think maybe I would start with the issue of a defendant being in a position to ride out the statute so long as they don't issue a recall. And I have two thoughts about that. One is, it's not true, but a recall is hugely problematic, of course, for any company. So it's not in their interest to allow people to be hurt. It's not something they want to do. But also, if every time there is a recall, the statute of limitations were revived, as it were, for anybody who's had the product, regardless, apparently, of the manner in which they were injured, that also would make for terrible law. We want voluntary recalls. My client issued a voluntary recall when it became evident that they need to do that. And I do want to point out that while counsel has said in the brief and now in oral argument that her particular item blew up, that is, in fact, not alleged in the complaint. What is alleged in the complaint is that it spilled, and it spilled hot contents, but nowhere in the complaint does it say that the reason, the mechanism of injury for this particular injury was because the pressure cooker was still under pressure and she was able to remove. She tried to and successfully removed the lid. All it says is that it was spalling hot liquid that spilled on it. The argument is that she did exercise reasonable diligence because she did search the Internet, et cetera. And why doesn't that work? Well, Your Honor, there are – she's looking for a recall, maybe to get a refund, maybe for whatever reason it is. But the validity of her suit, whether she has a suit to bring, doesn't depend on whether there's a recall. It doesn't depend on whether there are other assertions. My question is that she did exercise reasonable diligence, that even with the exercise of reasonable diligence, she did not uncover the defect. And it wasn't – or not the defect, the deception. And it wasn't until later that she realized that there was deceptive conduct. Your Honor, I respectfully disagree both with – both with respect to whether that is reasonable at all. I know you do, but why do you disagree? Because if you have a product that has injured you and you think you have a suit, you go see a lawyer who will undoubtedly figure out whether you have a suit, regardless of anybody else having been injured. You don't need to be the second person to be injured or any numbered person to be injured in order to have a suit. So if you're really going to pursue this, then you're going to do what people do and see if your product is actually defective. I actually really like the plaintiff relies on this case, and I think it does need to come out differently here. But the Peter Farrell case, the reason that that consumer in the Ford circuit was found – one of the reasons was found to have been reasonable in his search is because he took his car to a different mechanic. And they tried for a long time to figure out what was wrong with the car. And it was not until they removed the engine that they realized that its number doesn't match the car. That is a reasonable person, objectively speaking a reasonable person, who is really trying to figure out what's going on. I have no doubt that being injured – So are you suggesting that she should have taken it to an engineer to have it analyzed? To an engineer, to a lawyer. Or to another mechanic is what – Probably a lawyer. The lawyer probably has the engineer. I think that that would be the reasonable path. And certainly not to throw it out. If you think you have a product that has injured you, and you're going to go and throw that out, it's hard to imagine that a person who thinks that they're in possession of something that is defective would go and throw that piece out in today's world where everybody knows you're going to need the thing to show that it injured you. So I do think, Your Honor, that all in all, as a matter of law, that conduct is not sufficient to rise to the level of reasonable conduct. And certainly it is not rendered more reasonable by the timing of the recall. And I wanted to just maybe very quickly address the equitable tolling argument, which is to the effect that there was some sort of concealment that prevented her from timely bringing suit. But that, of course, requires specific conduct on which she relied, which sort of takes us back to this reasonableness issue. You have this product. You think it injured you. And the fact that there is not a recall, as a matter of law, that is not reasonable for you to then be convinced that it was a freak accident, unless you really did just spill the hot contents of a cooker, regardless of the pressure, for having no connection to the underlying defect that her specific product may or may not have had. So unless Your Honors have any other questions, I will rest on my brief. Thank you, Your Honor. I see we'll now hear from Mr. Belanger for two minutes. Thank you, Your Honor. I'd like to start off the rebuttal by going towards what my esteemed colleagues started off with in suggesting that the recalls are big deals and it's not in corporate defendants' best interest to let other people get hurt. But what they failed to address is why do we wait until 61 people got hurt? This is not a question of whether their recall was too late. The only issue is whether your client moved quickly enough or exercised due diligence. And so usually if you have a product and it explodes in your hands, that's enough to know there's something wrong with this product. What exactly? You're not sure, but you're on notice that there's a problem. So why? It's not clear to me why searching to see if there was a recall is enough to constitute due diligence. What I'm suggesting is that if the defendant had acted differently, when she would have done that Google search, she would have found out about this and could have acted sooner. That's the point I was trying to make. Also I'd like to, in the few seconds that I have left, counsel had mentioned the Peter Farrell case. One of the facts in that case that I think is very important that we shouldn't overlook is that although the plaintiff said that they did not realize the engine was swapped until it was pulled years later and they could see the VIN, let's remember the case started years before on an invoice where they were actually buying something called an engine swap. So even that person, seeing that their engine wasn't working right, taking it to a mechanic years later, realizing that there was in fact an engine swap, was found to exercise due diligence. So what is it your client did that's the equivalent of taking the car to a mechanic? She did her own investigation. But she didn't take her crockpot to anybody, right? No, Your Honor, but the plaintiff in the Farrell case contracted for an engine swap and then at the end of the day is surprised that there was an engine swap and because he had problems with the engine and kept trying to get it fixed, that was considered due diligence. Ms. Brandon tried her best at the time. We're not all lawyers here. We're not all engineers here. She did the best that she could and we've pled it. And the issue that we have is that we believe that we have pled sufficient facts to survive at the pleading stage and we would like to address this issue more further after we have a chance to do discovery and a motion for summary judgment. Fundamentally, we think that the district court did a bit of burden shifting on us here with the appreciation of the facts and not giving it the deference towards us that we're entitled to an arrest and thank you for your time. All right. Well, thank you both. We will reserve decision.